UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EL-AMIN MUHAMMAD #242898,

      Plaintiff,                       Case No.  1:16-cv-276

v.                                    HON. JANET T. NEFF

                                    MAGISTRATE RAY KENT

KYLE A. NEHER, d/b/a DET KYLE
A. NEHER, MICHAEL KASHER d/b/a
DET. MICHAEL D. KASHER, OFFICER
JOHN DOE alternate transport officer (NSPD),
(MSP) OFFICER JOHN DOE, DARRYL HAIRSTON
d/b/a (MCJ) DEPUTY DARRYL HAIRSTON,
ELAINE (DOE) d/b/a RN NURSE ELAINE (DOE)
last name unknown (MCJ),

      Defendants.

---

El-Amin Muhammad #242898 (in pro per)    Michael S. Bogren (P34835)
St. Louis Correctional Facility            Lisa A. Hall (P70200)
8585 N. Croswell Road                 Robert A. Callahan (P47600)
St. Louis, Michigan 48880            Attorneys for Defendants
                                    KYLE A. NEHER and MICHAEL KASHER
Allan C. Vander Laan  (P33893)      PLUNKETT COONEY
CUMMINGS MCCLOREY DAVIS & ACHO   950 Trade Centre Way, Suite 310
Attorney for Defendant "Unknown    Kalamazoo, Michigan  49002
Harrison"                        (269-226-8822)
851 Charlevoix Dr., SE, Suite 327    mbogren@plunkettcooney.com
Grand Rapids, MI 49546           lhall@plunkettcooney.com
616/975-7470                     rcallahan@plunkettcooney.com
avanderlaan@cmda-law.com

**BRIEF IN SUPPORT OF DEFENDANTS KYLE NEHER, MICHAEL KASHER
AND JOHN DOES' MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION AND PROCEDURAL HISTORY.

      Plaintiff filed the instant complaint on March 16, 2016. Defendants filed motions to

dismiss in August, 2016. On March 1, 2017, Magistrate Judge Kent issued a Report and

Recommendation, recommending the Defendants' motions to dismiss be granted and that Plaintiff's complaint be dismissed.  ECF No. 86, PageID 631-637. This Court adopted, in part, the Report and Recommendation. ECF No. 94, PageID 691-93. Because Plaintiff was seeking to file an amended complaint, the motion to dismiss by Defendant Neher was denied without prejudice. Plaintiff's negligence claim against all Defendants other than Defendant Kasher was dismissed.

Plaintiff filed his second amended complaint on March 20, 2018. ECF No. 128, PageID 835-43. In pertinent part, Plaintiff alleges on August 1, 2014, he was housed at the Ionia County Jail on a parole violation. On that date he was transported to the Muskegon County Jail. Plaintiff alleges during the transport Defendant Kasher negligently operated the transport vehicle at high speeds and struck a deer causing injury to the Plaintiff. Plaintiff alleges he sustained injury to his lower back and right wrist. Plaintiff alleges he made Kasher and Neher aware of his lower back and right wrist injury, that he requested to see a paramedic or physician, but they disregarded this request. Plaintiff further alleges he was transferred to a different police vehicle with an "alternate transport officer." He alleges this alternate transport officer likewise ignored his serious need for medical attention. Plaintiff alleges he was then taken to and booked into the Muskegon County Jail where he made co-Defendant Hairston aware of his injuries, but Hairston locked Plaintiff in a holding cell. Finally, Plaintiff alleges a nurse at the Muskegon County Jail, by the name of "Elaine," was made aware of Plaintiff's injuries, but ignored Plaintiff's request to see a doctor.

Plaintiff's deposition has been taken in this case. Pertinent portions of Plaintiff's deposition transcripts are attached as **Exhibit A**. Plaintiff's medical records from the Muskegon County Jail were marked as exhibits during Plaintiff's deposition, and are

attached as **Exhibit B.** Plaintiff's medical records from various facilities in the Michigan Department of Corrections where he was housed, subsequent to the August 1, 2014, incident, have been requested. They have not yet been produced. Moving Defendants shall supplement their briefing, as necessary, upon receipt of any records from the Michigan Department of Corrections pertaining to Plaintiff.

Moving Defendants submit Plaintiff's federal constitutional claim predicated upon deliberate indifference to a serious medical need must be granted. As explained, *infra*, pursuant to established case law Plaintiff did not have a serious medical need to which moving Defendants could be deliberately indifferent. Further, moving Defendants did not act with a culpable state of mind for the purposes of Fourteenth Amendment liability. Moving Defendants further submit they are entitled to qualified immunity from Plaintiff's claim for damages. Finally, Defendant Kasher submits Plaintiff's claim for negligence or gross negligence must be dismissed by this Court because barred by Michigan's governmental immunity statute.

Moving Defendants shall first set forth the applicable factual background as established during Plaintiff's deposition. Moving Defendants shall then provide this Court with pertinent legal analysis which, they submit, mandates the dismissal of Plaintiff's complaint with prejudice.

## II.    FACTUAL BACKGROUND.

Plaintiff has been an inmate in the Michigan Department of Correcitons for many years. In January, 2014, he was released on parole. **Exhibit A**, p. 33, lines 20-25. He was arrested once again on July 17, 2014, for violation of the terms of his parole. He was lodged in Ionia County from that day until August 1, 2014. On August 1, 2014, he was in the

process of being transferred to Muskegon County for an armed robbery for which he had been charged. Plaintiff ultimately was convicted of that armed robbery in 2016. **Exhibit A,** p. 34, lines 2-22.

Defendants Neher and Kasher were transporting Plaintiff to the Muskegon Count Jail. They had travelled approximately 15-20 minutes before the Norton Shores police department's squad car was involved in an accident. **Exhibit A**, p. 116, lines 13-15. Defendant Kasher was operating the squad car, Defendant Neher was in the front passenger seat. Plaintiff was in the rear passenger seat. **Exhibit A**, p. 115, lines 1-3, 21-24. Kasher was driving westbound on I-96 in the left hand lane of traffic, when a deer came from the right and struck the right front portion of the squad car. **Exhibit** A, p. 118, lines 5-23; **Exhibit C**, Norton Shores report. Kasher pulled the squad car off the road. The State Police was called to investigate and make a report. The video of the accident is attached as **Exhibit D.**

Neher opened Plaintiff's door to ascertain if Plaintiff was okay. **Exhibit A,** p. 46, lines 15-24. Plaintiff testified he told Neher that he "might" need to see a nurse or medic because he was experiencing "some pain." Plaintiff testified Neher closed the door, and Kasher subsequently came back to the car and opened the window a bit because of the heat. **Exhibit A,** p. 47, lines 3-10. Plaintiff admitted he was not manifesting any obvious injury such as bleeding or broken bones.

> Q    And - - and you agree, at that point, there was no blood, there was no broken bones, and there was not obvious injury?
>
> A    No.
>
> Q    No what?
>
> A    It wasn't - - I wasn't bleeding or broken up or nothing like that.

Q       Okay.  So, you weren't bleeding?

A       No.

Q       You weren't - - there were no broken - -- no obvious broken bones?

A       Right.

Q       No obvious injuries at all, correct?

A       Not that you could just be like yo, he's injured; let's do something.

**Exhibit A,** p. 123, line 19 through p. 124 line 7.

Plaintiff testified when he told Kasher and Neher that he may need to see a medic or nurse, they related Plaintiff would be seeing someone at the Muskegon County Jail, or to let the jail personnel know. **Exhibit A,** p. 134, lines 3-21.

Plaintiff testified that over time his right wrist began to swell, and his back was "feeling strange." **Exhibit A**, p. 122, lines 3-11. Plaintiff further testified while he was in the squad car he was not yelling, screaming, or saying he was in pain and needed help. **Exhibit A,** p. 125, lines 5-9.

After the Michigan State Police arrived, the trooper came to Plaintiff's door and opened it.  He asked Plaintiff if he was hurt. Plaintiff testified he related to the trooper he was hurt and that he might need to see a doctor or medic.

The squad car was drivable. Kasher drove the squad car with Plaintiff in the back seat to a location near Muskegon.  Plaintiff was transported into a different squad car. Plaintiff did not complain while he was in the second squad car. Plaintiff was taken to the Muskegon County Jail where he was processed in. **Exhibit A,** p. 54, lines 17-24. Plaintiff testified while he was in the second squad car he inquired whether they were going to the hospital, and the officer said he was instructed to take Plaintiff to the Muskegon Count Jail.

**Exhibit A,** p. 57, lines 20-25. The video of the transport of Plaintiff in the new vehicle to the Muskegon County Jail is attached as **Exhibit E.**

When Plaintiff was booked in the Muskegon County Jail he was interviewed by co-Defendant Hairston. Plaintiff testified at that time he advised Hairston he was injured, and he needed to see a nurse. **Exhibit A**, p. 62, lines 19-22. Plaintiff was advised by Hairston that he would be seeing a nurse. **Exhibit A,** p. 63, lines 1-5. Plaintiff testified the objective sign of trauma that he was exhibiting at that point in time was "pain." **Exhibit A**, p. 68, lines 1-5. Plaintiff ultimately saw a nurse, Elaine Garrett. Plaintiff testified he told nurse Garrett he had been in an accident and he needed to see a doctor. **Exhibit A,** p. 83, lines 1-14. Plaintiff testified on September 5, 2014, he saw Dr. Joseph Natole, who diagnosed Plaintiff with a lumbar sprain. **Exhibit A**, p. 86, lines 3-10. Plaintiff testified Dr. Natole prescribed Flexeril and Meloxicam for the pain. Plaintiff also testified he was diagnosed by the physician at the Muskegon County Jail as having a lumbar strain. **Exhibit A**, p. 39. Plaintiff testified he has received treatment and therapy in the form of back strengthening exercise. **Exhibit A,** p. 39, line 22 through p. 40, line 2. A nurse at a facility in Jackson prescribed Naproxen for Plaintiff. **Exhibit A,** p. 89, lines 6-19. At the Brooks Correctional Facility in Muskegon, Plaintiff saw a doctor. Plaintiff was provided with exercises to perform, and was directed to take Tylenol or Motrin. **Exhibit A,** p. 93, lines 5-20.

III.    **ANALYSIS OF PLAINTIFF'S CLAIMS.**

    A.    **No Norton Shores' Officer Was Deliberately Indifferent To Any Medical Need Of Plaintiff.**

At all times pertinent to this lawsuit, Plaintiff was a pretrial detainee. Accordingly, his constitutional claim arises from the Fourteenth Amendment Due Process clause. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004)(citing *Bell v. Wolfish,* 441

U.S. 520, 545 (1979)). Irrespective of whether the claim arises under the Fourteenth Amendment Due Process Clause, or the Eighth Amendment Cruel and Unusual Punishment Clause, Plaintiff's claim is subjected to the same analytical framework. *Id.*

In order to prevail in this lawsuit, Plaintiff must establish the Norton Shore Police Defendants were deliberately indifferent to a serious medical need. Jail officials or, in this case police officers with custody of an inmate, "who are so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain," inflict cruel and unusual punishment in violation of the Fourteenth Amendment Due Process clause. *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001)(quoting *Horn v Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994)). The test for determining whether a Defendant has been deliberately indifferent has both an objective and a subjective component. The objective component requires Plaintiff to demonstrate he was subjected to a "sufficiently serious" deprivation. *Napier, supra* at 742. The objective component requires Plaintiff to establish "the existence of a sufficiently serious medical need." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 (6th Cir. 2005)(quoting *Blackmore, supra* at 895). To establish the subjective component Plaintiff must establish the Defendants acted with "a sufficiently culpable state of mind." *Cain v. Irvin*, 286 F. Appx. 920, 926 (6th Cir. 2008)(quoting *Wilson v Seiter*, 501 U.S. 294, 297 (1991)). Plaintiff need not show the Defendants consciously sought to inflict pain upon him by withholding treatment. *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988). To establish the subjective component of a deliberate indifference cause of action, it is incumbent upon Plaintiff to allege and prove facts which, if true, shows the Defendants "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then

7

disregarded that risk." *Id.* at 926 (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001).

The Sixth Circuit has adopted different analyses based upon how serious the medical need is:

> Where a plaintiff's claims arise from an injury or illness so obvious that even a layperson would easily recognize the necessity for a doctor's attention, the plaintiff need not provide verifying medical evidence to show that, even after receiving the delayed necessary treatment, his medical condition worsened or deteriorated. Instead, it is sufficient to show that he actually experienced the need for medical treatment, and the need was not addressed within a reasonable time frame.

> *Blackmore, supra* at 390 F.3d at 899-900.

In *Blackmore*, the Sixth Circuit distinguished its prior decision in *Napier*, which analyzed whether the deprivation alleged was sufficiently serious.  If the condition is not sufficiently serious, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier, supra* at 742 (quoting *Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d 1176, 1188 (11th Cir. 1994)). In *Blackmore* the serious medical need was appendicitis. This medical need was sufficiently serious and "obvious," because while he was in police custody Blackmore complained of sharp and severe stomach pains, he made these complaints over two days, and he was vomiting. The Sixth Circuit held these symptoms were "the classic signs of appendicitis." *Blackmore, supra* at 899-900.

In *Estate of Carter*, the serious medical need was a heart attack. The objective evidence presented to the defendants were complaints of chest pain, the need to go to the hospital, and the plaintiff had not received her heart medicine for three days. Further, fellow detainees testified the plaintiff loudly cried for help, continuously complained that

her chest hurt and she needed to go to the hospital. *Carter, supra* at 307. The Sixth Circuit held the plaintiff displayed the "classic" signs of a serious illness and pending heart attack. The Sixth Circuit held "even laypersons can be expected to know that a person showing the warning signs of a heart attack needs treatment immediately in order to avoid death." *Id.* at 312.

In the case pending before this Court, Plaintiff cannot establish he had a sufficiently serious medical need to which the Defendants could be indifferent. Plaintiff was not manifesting any broken bones. He was not bleeding. **Exhibit A,** p. 123, line 19 through p. 124, line 7. Plaintiff testified at the most his back was "feeling strange." **Exhibit A**, p. 122, lines 4-5. Further Plaintiff only related to Norton Shores Police Defendants that he "***might*** need to see a nurse or a medic." **Exhibit A**, p. 47, lines 3-4, p. 121, lines 15-18. As to Plaintiff's alleged wrist injury, he testified he never had any treatment for it. **Exhibit A**, p.131, lines 9-14. He testified he had minimal follow-up treatment to his lower back consisting of some low grade pain medications, and receipt of instructions for stretching exercises. The only testing performed on Plaintiff, per Plaintiff's testimony, revealed lumbar strain. There is no evidence Plaintiff experienced any detrimental effect from any delay in receiving medical treatment.

Moreover, there is no question of fact Plaintiff cannot establish the subjective component of a deliberate indifference claim. There are no facts from which it could be inferred there was a substantial risk of harm to Plaintiff, that the Norton Shores police officers drew that inference, and disregarded that substantial risk of harm to Plaintiff. As Plaintiff testified, he only related he ***might*** need to see a nurse or doctor. He did not scream, cry, or complain between the time the accident occurred and when he was taken to

9

Muskegon County Jail. Plaintiff in fact was taken to see a nurse upon arrival at the Jail. It is respectfully submitted Norton Shore Defendants are entitled to an order of summary judgment on Plaintiff's Fourteenth Amendment deliberate indifference cause of action, as Plaintiff can establish neither the objective nor subjective component necessarily to proceed further.

### B.     Norton Shores Defendants Are Entitled To Qualified Immunity From Plaintiff's Damage Claims.

Norton Shores Defendants are shielded by the doctrine of qualified immunity. Qualified immunity is an affirmative defense which shields officials from civil liability as long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v Callahan*, 555 U.S. 223, 231 (2009). A clearly established right is one that is "sufficiently clear that ***every reasonable official would have understand that what he is doing violates that right.***" *Reichle v. Howards*, 566 U.S. ___, ___, 132 S. Ct. 2088, 2093 (2012).

In conducting its qualified immunity analysis, this Court must not require presentation of a case directly on point. However, existing precedent "must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011). Put simply, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). As the Supreme Court has consistently emphasized, "we have repeatedly told courts . . . not to define clearly established law at a high level of generality." *Ashcroft, supra* at 742. Instead, the dispositive question is "whether the volatile nature of *particular* conduct is clearly established." *Ibid.* The qualified immunity inquiry must be undertaken by this Court in

light of the specific facts and context of this case, not as a broad general proposition. *Brosseau v. Haugen,* 534 U.S. 194, 198 (2004).

It was clearly established in 2014 that if a detained individual, such as Plaintiff, was manifesting a ***serious*** medical need, the Norton Shores Defendants had the obligation to see to it that Plaintiff receive medical care. The law was also clearly established that a minor malady or non-obvious injury, such as Plaintiff presented in this case, does not give rise to the obligation to ensure medical treatment was provided unless the failure to do so would result in a detrimental effect to the Plaintiff. Indeed, the established law in 2014 was that a complaint of a back ache is not a medical condition to which a Defendant can be deliberately indifferent. See *e.g. Brim v. Clark,* 2011 W.L. 3477067 (W.D. Mich. 2011). **Exhibit F.** It is respectfully submitted Norton Shores Defendants are entitled to qualified immunity from Plaintiff's claim for damages in this case.

> **C.** **Plaintiff's State Law Negligence Claim Against Kasher Must Be Dismissed.**

Plaintiff proceeds against Defendant Kasher on a simple claim of negligence for the manner in which Kasher operated the police squad car leading up to the accident with the deer. Defendant Kasher is entitled to immunity conferred by Michigan's Governmental Immunity Act, M.C.L. §691.1407. Plaintiff's negligence claim fails to state a claim in avoidance of governmental immunity.

Pursuant to the Governmental Immunity Act, Kasher is immune from tort liability if he was engaged in the exercise or discharge of a governmental function, and his conduct did not amount to gross negligence which was ***the*** proximate cause of the injury to the Plaintiff.  See M.C.L. §691.1407(2)(c). Pursuant to the Michigan Governmental Immunity

Act, gross negligence is "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." M.C.L. §619.1407(8)(a).

Officer Kasher responded to Plaintiff's request for admissions #2 and 3, that his squad car was traveling approximately 75 mph. **Exhibit G.** It is respectfully submitted that operating a motor vehicle 5-6 mph over the speed limit, in the left lane of traffic on an interstate, is not grossly negligent conduct which would remove Kasher from the protection of Michigan's Governmental Immunity Act. It simply is nonsensical to draw a contrary conclusion.

Moreover, the driving of the squad car by Kasher must have been ***the*** proximate cause of the accident. The determination whether Kasher's manner of driving the automobile was ***the*** proximate cause is not a question of fact. *Ray v Swager,* 501 Mich. 52, 66-67, 903 N.W.2d 366, 372 (2017). In *Ray,* the Michigan Supreme Court identified the legal causation inquiry as "whether the harm caused to the plaintiff was the general kind of harm the defendant negligently risked." *Id.* at 63, 903 N.W.2d at 371. This requires the determination whether it was foreseeable to Kasher that his manner of driving was the type that would result in harm to the Plaintiff. *Id.* Proximate causation requires an analysis of the foreseeable consequences of the conduct of Kasher. The Court in *Ray* stated the rule regarding proximate cause as follows:

> If a man does an act and he knows, or by the exercise of reasonable foresight should have known, that in the event of a subsequent occurrence, which is ***not unlikely to happen***, injury may result from his act, and such subsequent occurrence does happen and injury does result, the act committed is negligent, and will be deemed to be the proximate cause of the injury.
>
> *Id.* at 67-68, 903 N.W.2d at 373. (emphasis added) (quoting *Northern Oil Company v. Vandervort*, 228 Mich. 516, 518, 200 N.W. 145 (1924)).

It readily can be acknowledged having a deer run across the path of a car in traffic is not unheard of in the State of Michigan. It does not necessarily follow that having a deer run out in front of a car is not unlikely to happen. On the contrary, it is submitted operating a motor vehicle slightly in excess of the speed limit, and being unable to bring that motor vehicle to a stop before striking a deer, is a highly unlikely event to occur. Moreover, it is highly unlikely that injury will occur in an extraordinarily remote occurrence in which a deer runs across the path of a moving motor vehicle. It is respectfully submitted that this Court must conclude Defendant Kasher a) was not grossly negligent in the manner in which he operated the squad car on August 1, 2014; and b) his operation of the squad car was not **the** proximate cause, which is a legal concept, of the accident at issue. As a matter of law Defendant Kasher's operation of the squad car was not **the** proximate cause of the injuries claimed by Plaintiff in this case.

**IV.    CONCLUSION.**

For the reasons set forth in this brief, moving Defendants respectfully submit this Court must grant their motion for summary judgment, and dismiss Plaintiff's complaint with prejudice.  Norton Shores Defendants have not been able to make contact with Mr. Muhammad to ascertain his position on Defendants' Motion for Summary Judgment, because he is incarcerated with the Michigan Department of Corrections, and has recently been moved to a new facility.

Dated:  November 9, 2018                    Respectfully submitted,

                                            PLUNKETT COONEY


                                            By:   /s/ Robert A. Callahan
                                                  Robert A. Callahan (P47600)
                                                  Attorney for Defendants
                                                  950 Trade Centre Way, Suite 310
                                                  Kalamazoo, MI  49002
                                                  **Direct Dial:  269/226-8856**

Open.00560.61916.21171636-1