UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EL AMIN MUHAMMAD,

                Plaintiff,

v.

KYLE A. NEHER, *et al.*,

                Defendants.

_____/

Case No. 1:16-cv-276

Hon. Janet T. Neff

## REPORT AND RECOMMENDATION

This is a *pro se* prisoner civil rights action brought pursuant to 42 U.S.C. § 1983. While plaintiff is currently in the custody of the Michigan Department of Corrections (MDOC), this case involves incidents which occurred prior to his incarceration. This matter is now before the Court on motions for summary judgment filed by defendant Darryl Hairston (ECF No. 169), defendants Michael D. Kasher, Kyle A. Neher, and "Unknown Party #2" (ECF No. 171), and plaintiff El Amin Muhammad (ECF No. 175).

### I.      Plaintiff's second amended complaint

Plaintiff's claims arise from an incident which occurred on August 1, 2014.  On that date, while defendants Kasher and Neher were transporting plaintiff to the Muskegon County Jail, their squad car hit a deer on the highway.  Plaintiff claims that he was injured during the collision.  After the accident, defendants Kasher and Neher continued their journey to Muskegon County.  At some point, they transferred plaintiff to a different car which transported him to the Muskegon County Jail.  Defendant Hairston was the booking officer at the jail. Plaintiff sued Kasher, Neher, Hairston, and some unidentified defendants for failing to attend to his serious

1

medical needs which resulted from the accident.

The Court previously summarized plaintiff's allegations in his second amended complaint (ECF No. 128) as follows:

### A.  Defendants Kasher and Neher

Plaintiff sets forth the same allegations for these two defendants: that they were aware of plaintiff's injuries because plaintiff expressed that he had "pain and serious discomfort" from his lower back and right wrist following the collision; that plaintiff requested to see a paramedic or physician at or about the time of the collision; that no paramedic was called; that no arrangements were made for plaintiff to see a physician; and that plaintiff "remained cramped and injured in back of the vehicle in full hand[,] belly and ankle restraints." SAC [Second Amended Complaint] at PageID.652-653.

Plaintiff alleged that he met the objective component of the deliberate indifference claim because he "was involved in a serious accident on a highway with a crossing animal at very high speeds in full body restraints without a seat belt, expressing a serious medical need" which "was the result of a[n] injury incurred upon the accident." *Id.* at PageID.652-653. Plaintiff alleged that he met the subjective component because: both Kasher and Neher wore seat belts; the vehicle was "completely totaled" by the damage; the deer was dead; the vehicle was undrivable; Kasher and Neher requested alternate transport for plaintiff; and plaintiff was in full body restraints in the back of the vehicle suffering from pain. *Id.* at PageID.653.

Based on these allegations, the Court concludes that plaintiff's proposed second amended complaint contains sufficient allegations to state Fourteenth Amendment claims for deliberate indifference against defendants Kasher and Neher that have "facial plausibility," i.e., "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.  Accordingly, plaintiff's motion will be granted with respect to his claims that defendants Kasher and Neher were deliberately indifferent to his serious medical needs. The Court will direct the Clerk to arrange service on defendant Kasher.

Order (ECF No. 125, PageID.827-828).  The Court notes that the second amended complaint also included a state law claim that defendant Kasher "negligently operated" the police cruiser.  Second Amend. Compl. (ECF No. 128, PageID.838).

### B.    Defendant Hairston

Plaintiff alleged that at 1:20 p.m. he was booked in the Muskegon County Jail by defendant Hairston. SAC at PageID.655. Plaintiff alleged Hairston was aware of plaintiff's injury "as plaintiff expressed his injuries and that plaintiff needed medical attention when plaintiff was having trouble standing and finger printing." *Id.* (emphasis omitted). Defendant Hairston told plaintiff "that he would see a nurse after he was booked into the jail." Plaintiff then stated that defendant Hairston "did not notify medical staff that plaintiff was in a car accident and in clear need of medical attention." *Id.* at PageID.655-656 (emphasis omitted). Plaintiff alleged that he met the objective component because Hairston "was made aware of the accident and injuries plaintiff sustained" which were "sufficiently serious injuries where medical needs were required." *Id.* at PageID.655 (emphasis omitted). Plaintiff alleged that he met the subjective component because defendant Hairston "observed the pain and plaintiff's inability to stand without experiencing great agony and in his wrist during finger printing process," that Hairston could "infer substantial risk to plaintiff," and that Hairston "disregarded that risk and did not notify medical staff that plaintiff was in a car accident and in clear need of medical attention." *Id.* at PageID.655-656 (emphasis omitted). Plaintiff later alleged that he saw a nurse regarding basic intake questions about seven hours later (8:30 p.m.). *Id.* at PageID.656.

Based on these allegations, the Court concludes that plaintiff's second amended complaint contains sufficient allegations to state Fourteenth Amendment claims for deliberate indifference against defendant Hairston that have "facial plausibility." *See Iqbal*, 556 U.S. at 678.  In reaching this determination, the Court notes that plaintiff's allegations are not very informative.  However, given the context of this case, *i.e.*, that plaintiff was involved in a collision which totaled the transport vehicle the Court concludes that plaintiff's allegations are sufficient. For these reasons, plaintiff's motion will be granted with respect to his claim that defendant Hairston was deliberately indifferent to his serious medical needs.

Order (ECF No. 125, PageID.828-829).

### C.    Unknown defendants

The second amended complaint also lists "Officer JOHN DOE alternate transport", "(MSP) Officer JOHN DOE", and "ELAINE (DOE) last name unknown . . . was employed at Muskegon County Jail as a RN-Residential Nurse."  None of these defendants have been served. A "Doe" defendant listed in a complaint is not a party to a lawsuit.  Rather, "Doe defendants are routinely used as stand-ins for real parties until discovery permits the intended defendants to be

installed." *Hindes v. FDIC*, 137 F.3d 148, 155 (3rd Cir. 1998) (internal quotation and citation omitted). The failure to identify and serve a Doe defendant constitutes failure to prosecute and warrants a dismissal of that defendant. *See Saucier v. Camp Brighton Prison*, No. 13-15077, 2016 WL 11468926 at *3 (April 26, 2016), R&R adopted, 2016 WL 3251761 (E.D. Mich. June 14, 2016). Here, plaintiff has failed to amend his complaint to state claims against the real parties. For this reason, the Court should dismiss plaintiff's claims against these three "Doe" defendants.

## II.    Motions for summary judgment

### A.    The parties' motions

Plaintiff has moved for summary judgment against all defendants on all claims. Defendants Hairston, Kasher, and Neher have moved for summary judgment with respect to plaintiff's federal constitutional claim.  In addition, defendant Kasher has moved for summary judgment on the state law claim, on the ground that he is entitled to immunity under Michigan's Governmental Immunity Act, M.C.L. § 691.1407.

### B.    Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the Court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## C.    Federal constitutional claim for deliberate indifference

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

During the relevant time period, plaintiff was a pre-trial detainee. It is well established that an inmate has a cause of action under § 1983 against prison officials for "deliberate

indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97 (l976). "Pretrial detainees are analogously protected under the Due Process Clause of the Fourteenth Amendment."  *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004).  Thus, "[w]hether a convicted prisoner or a pretrial detainee, deliberate indifference to one's need for medical attention suffices for a claim under 42 U.S.C. § 1983."  *Id. See Miller v. Calhoun County*, 408 F.3d 803, 812 (6th Cir. 2005) ("[a]lthough the Eighth Amendment's protections apply specifically to post-conviction inmates, the Due Process Clause of the Fourteenth Amendment operates to guarantee those same protections to pretrial detainees as well") (internal citation omitted).

A viable Eighth Amendment claim consists of an objective and a subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  A court considering such a claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind.  *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).  The objective component requires the infliction of serious pain or failure to treat a serious medical condition.  *Id.* at 8-9.  "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.*  at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety.  *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must

also draw the inference." *Farmer*, 511 U.S. at 837.  Mere negligence in diagnosing or treating a medical condition does not constitute an Eighth Amendment violation.  *Id.* at 835. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

### 1.    Defendants Kasher and Neher

### a.    Evidence presented by the parties

Defendants Kasher and Neher rely primarily on plaintiff's deposition testimony and the videos related to the accident and later events as set forth below.  The accident occurred when defendants Kasher and Neher were transporting plaintiff from the Ionia County to the Muskegon County Jail to be processed for a charge of armed robbery.[1]  It is undisputed that defendant Kasher drove the squad car, that defendant Neher was a passenger in the front seat, and that plaintiff was a passenger in the rear seat.  Defendants summarized the incident as follows:

> Kasher was driving westbound on I-96 in the left-hand lane of traffic, when a deer came from the right and struck the right front portion of the squad car. Exhibit A, p. 118, lines 5-23 [Muhammad Dep. (ECF No. 172-1, PageID.1224]; Exhibit C, Norton Shores report [ECF No. 172-3]. Kasher pulled the squad car off the road. The State Police was [sic] called to investigate and make a report. The video of the accident is attached as Exhibit D.

Kasher/Neher Brief at PageID.1194.[2]

The Court has viewed the DVDs submitted by defendants.  The video footage shows a deer running into the highway from the right shoulder, the deer hitting the right-front bumper area of the car, and the car coming to a stop on the left shoulder.  DVD (Exh. 2) (11:12:37

---

[1] The Court notes that plaintiff was released on parole in January 2014 and arrested for a parole violation on July 17, 2014.  Plaintiff Dep. (ECF No. 169-5, PageID.1141).  He was in the Ionia County Jail from July 2014 until he was picked up for transfer to Muskegon County on August 1, 2014.  *Id.*

[2] Defendants Kasher and Neher refer to the videos related to the accident as Exhibits D and E; however, they did not include exhibits with their briefs.  Defendants appear to be referring to the DVDs filed by defendant Hairston.  One DVD (ECF No. 174-1, Exhibit 2) shows the accident and subsequent events, while the other DVD (ECF No. 174-1, Exhibit 4) shows footage of plaintiff's transfer to the Muskegon County Jail.

to 11:12:49).  In short, this was an accident caused by a deer running onto a highway (not an

uncommon occurrence in Michigan). The only notable aspect of the video is the uneventfulness of

the accident: the car did not swerve; no airbags deployed; and Kasher stopped the car on the left

shoulder.  Immediately after the accident, an officer is heard saying "You all right back there

Muhammad" to which plaintiff responds "I hit my leg a little bit.  I'm [unintelligible] hurt [?]."

(*Id*. at 11:12:58 to 11:13:06).[3]

During his deposition, plaintiff provided a different version of the events.  Plaintiff

testified that defendant Neher opened plaintiff's door to see if he was okay.  Muhammad Dep. at

PageID.1143-1144.[4]

> [H]e looked in and I – and I told him I – I might need to see a nurse or medic 'cause
> I'm experiencing some pain.  Then he closed the door.  And then Kasher came back
> to the car, 'cause he had got out of the car to, I guess, check out the damage and all
> of that stuff.  And then he came back and cracked the window 'cause the windows
> were rolled up.  It was hot.  It was real hot outside. . . .

*Id*. at PageID.1144.

Defendants' counsel elicited additional testimony from plaintiff:

> Q    All right.  Well, let's kind of unpack this a little bit.  So, Neher comes around
> to your side and opens the door?
> A    Yes.
> Q    And you say you need to see – you need medical attention, you need to see
> a nurse?
> A    Yes.
> Q    Did you say – was it – did you say call an ambulance; did you ask for an
> ambulance?
> A    A medic.

*Id*.

Plaintiff also testified:

---

[3] It appears to the Court that plaintiff responded "I'm [not] hurt." (Exh. 2 at 11:12:58 to 11:13:06).  However, due to the poor quality of the recording, the Court cannot state this with certainty.

[4] For purposes of this report, the Court will cite pages from the copy of plaintiff's deposition transcript attached to defendant Hairston's Brief at ECF No. 169-5 (PageID.1133-1186)

Q        When Officer Neher opened your door and looked in, as I understand, you told him that you may need to see a nurse or a medic?
A        Yes.
Q        And, I take it that was because you were feeling some sort of pain?
A.       Yes.
Q        Did you describe where you were feeling the pain?
A        I just told him my wrist -- it was – it was swell – my wrist started swelling -- swelling up.  You could literally see that my wrist was something was wrong with it.
Q        So, your --
A        I don't think it was broken.  I just hyperextended it and it started swelling up and I let him know that my back was feeling strange.
Q        Strange you say?
A        Yeah, 'cause something, was wrong.
Q        Okay. So, immediately, you're saying, your right wrist, started to swell?
A        Not immediately, but eventually, over time just sitting in the car, after the injury it started swelling up.
Q        So, when did start to swell? I mean you -- was that before the pol -- the state police arrived or after?
A        It was swelling when the state police got there.
Q        So, within a half an hour?
A        Yeah.
Q        Do you remember after the accident the officers turned and asked if you were okay?
A        I don't recall.

Muhammad Dep. at PageID.1163.

Plaintiff specifically denied "telling them that I was okay." *Id*.  Later, plaintiff

testified as follows:

Q        And you say he [defendant Neher] looked in to see whether you were okay?
A        I believe that's what he was doing.
Q        And - - and you agree, at that point, there was no blood, there was no broken bones, and there was not obvious injury?
A        No.
Q        No what?
A        It wasn't - - I wasn't bleeding or broken up or nothing like that.
Q        Okay. So, you weren't bleeding?
A        No.
Q        You weren't - - there were no broken - -- no obvious broken bones?
A        Right.
Q        No obvious injuries at all, correct?
A        Not that you could just be like you, he's injured; let's do something.

9

*     *     *

Q     And during the time you were in the vehicle, you were not yelling or screaming or saying, you know, I'm in pain, I need help or anything like that, correct?

A     I wasn't screaming and yelling, no.  I don't – scream or yell.

Muhammad Dep. at PageID.1163-1164.

Plaintiff testified that after the Michigan State Police (MSP) trooper arrived, the trooper came to plaintiff's door and opened it. Muhammad Dep. at PageID.1145.  The trooper asked plaintiff if he was hurt.  *Id*.  Plaintiff told him "yes, I might need to see a doctor or a medic." *Id*.  The audio portion of the video does not include this encounter.  However, as discussed, *infra*, the MSP Officer's report stated that plaintiff was not injured.  After the MSP Officer completed the report, defendants Kasher and Neher continued to transport plaintiff.  At some point in time, plaintiff was transferred to a different vehicle and driven to the Muskegon County Jail. Muhammad Dep. at PageID.1146.  Plaintiff testified that Kasher and Neher helped him into the car because he "could barely walk."  *Id*.  Plaintiff never asked Kasher and Neher if they had called an ambulance because he "naturally assumed" that they would have an ambulance take him to the hospital.  *Id*.

When plaintiff arrived at the Muskegon County Jail, he was interviewed by the booking officer, defendant Hairston.  Plaintiff Dep. (ECF No. 169-5, PageID.1148).  Plaintiff testified that, during the booking, he told Hairston that he was in an accident, injured and needed a doctor or a nurse.  *Id*.  Hairston told plaintiff that he would be seeing a nurse.  *Id*.  Although the booking records stated that plaintiff had no visible signs of trauma, plaintiff stated that those were only "observatory" comments.  *Id.* at PageID.1149.  According to plaintiff, "I was expressing my pain," "I told [Hairston] I was hurting several times", and "I need to see a doctor.  I didn't want to answer questions."  *Id*.  Plaintiff admitted that he did not have any marks, bruises or cuts.  *Id*.

However, plaintiff stated that he was limping, "could barely stand up straight," and that his wrist hurt while being fingerprinted. *Id.* at PageID.1149-1150.

After his booking and before he was transported to the second floor security cell, plaintiff saw a nurse (Elaine Garrett). *Id*. at PageID.1153. Nurse Garrett asked about plaintiff's health insurance and medication. *Id*. at PageID.1154. When plaintiff told the nurse about his injuries the nurse told plaintiff that she was not there to do a physical examination pertaining to his injury, and that plaintiff needed to send a kite to medical to see the doctor. *Id*. at PageID.1153. Plaintiff said he wrote a number of kites but did not see a doctor until September 5, 2014. *Id*. at PageID.1154. The doctor told plaintiff he had a lumbar strain and gave plaintiff exercises to strengthen the muscles in his back, advice on how to avoid further injuries, and pain medication. *Id*. at PageID.1142. The doctor prescribed a three-day supply of Flexeril and Meloxicam for lumbar strain. Prescription (ECF No. 172-2, PageID.1235). While he was at the MDOC facility in Jackson, plaintiff received Naproxen. Muhammad Dep. at PageID.1155. While at the MDOC's Brooks facility at an unidentified date, plaintiff stated that the nurse told him to do exercises and take Tylenol. Muhammad Dep. at PageID.1156. When plaintiff was at the MDOC's Alger facility in May 2018, he was given naproxen. *See* used blister packs (ECF No. 172-2, PageID.1241-1242).

In support of his motion, plaintiff submitted copies of the following documents: the MSP Crash Report from August 1, 2014, indicating that he was a passenger, suffered no injury, and that he was not taken to a hospital or transported by ambulance (ECF No. 175-1, PageID.1316); a photograph which appears to show a damaged right-front end of a police cruiser (ECF No. 175-1, PageID.1313); a City of Norton Shores Vehicle Accident Report from defendant Kasher stating that the weather was clear at the time of the accident, that a grown doe ran across the roadway from the right side while he was driving about 75-76 MPH on Interstate 96 near the

Lowell exit, that he applied the brakes but was unable to stop and struck the deer, that "[a]ll passenger's [sic] were ok and all passengers had their seatbelts on," that the MSP investigated the accident, and that the damage to the city vehicle involved the front hood of the car, the front right corner panel, and the front right headlight and turn signal (ECF No. 175-1, PageID.1312).

Plaintiff refers to the fact that defendants Kasher and Neher were wearing seatbelts and that the seatbelt assemblies were damaged "consistent with a high speed collision." Muhammad Motion/Brief (ECF No. 175-1, PageID.1275).  While all of the reports reflect that plaintiff was wearing a seatbelt, plaintiff testified that he was in "belly restraints with handcuffs connected to the belly restraints and ankle restraints", that "[t]hey didn't put me in a seatbelt", and that during the accident he was "bouncing around".  Muhammad Dep. at PageID.1143.  Plaintiff states that there is a "[p]ositive inference [sic] of Proof that Plaintiff was in Fact 'unsecured by a seatbelt'" because the only damaged seatbelts were in the front seat.  *Id.* at PageID.1276.

        **b.**    **Discussion**

Deliberate indifference to serious medical needs can be manifested by guards "in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05 (footnotes omitted). "The failure of the officers to recognize [a prisoner's] medical need is not, of course, evidence of deliberate indifference." *Estate of Harbin v. City of Detroit*, 147 Fed. Appx. 566, 571 (6th Cir. 2005).  In determining whether a guard is deliberately indifferent to a prisoner or pre-trial detainee's serious medical needs, the Court views the guard's actions as a layperson, not as a medical professional. "[B]ecause police officers and prison guards are laypersons, not physicians, we must determine if a layperson would easily recognize the necessity for a doctor's attention under the circumstances presented." *Id.* (internal quotation marks, citations and brackets omitted).  "As *Farmer* makes

clear, the officers must not only be aware of the facts from which they could draw the inference that [a prisoner] had a serious medical need, they also must draw that inference." *Id.*, citing *Farmer*, 511 U.S. at 837.  "[I]n cases where prison officials 'actually knew of a substantial risk to inmate health or safety, [they] may be found free from liability if they reasonably respond to the risk, even if the harm ultimately was not averted.' "  *Harrison v. Ash*, 539 F.3d 510, 519 (6th Cir. 2008), quoting *Farmer*, 511 U.S. at 844.

Here, it is undisputed that plaintiff was in the back seat of the squad car when it hit a deer, that no airbags deployed as a result of the accident, that the car was drivable after the accident, and that plaintiff had no outward signs of injury.  Indeed, the MSP report relied on by plaintiff stated that he was not injured (ECF No. 175-1, PageID.1316).  As demonstrated by the audio portion of the DVD (ECF No. 174-1, Exh. 2), when defendant Neher checked on plaintiff immediately after the accident, plaintiff stated that he hit his leg "a little bit" and his "back was feeling strange."  According to plaintiff, he advised Neher that he "might" need to see a nurse or medic.  The Court does not consider these latter statements; these statements do not appear in the audio and are "blatantly contradicted" by the DVD.  *See Scott*, 550 U.S. at 380.[5]  Some time later, plaintiff stated that his wrist became swollen like he had "hyperextended" it.  However, plaintiff did not complain about the need to treat a swollen wrist.  Based on this record, plaintiff has not established the objective prong of a deliberate indifference claim.  While plaintiff complained of minor injuries, there is no evidence that he had a serious medical condition which required immediate care by a nurse, medic, or physician.

In the alternative, plaintiff's claim also fails if the Court views this as a case involving a delay in treatment.  In reviewing a claim of delayed treatment, the Court looks to

---

[5] Even if the Court were to accept these statements, at most plaintiff said that he "might" need a nurse.  Because plaintiff was being transported to the Muskegon County Jail, a jail nurse would be available at the end of his journey.

*Napier v. Madison County*, 238 F.3d 739 (6th Cir. 2001), which "held that an inmate who complains that a delay in medical treatment is 'sufficiently serious' so as to violate his constitutional rights, must present 'verifying medical evidence' to establish the detrimental effect of the delay in medical treatment."  *Blackmore*, 390 F.3d at 894 (summarizing and applying the rules set forth in *Napier*).  The verifying evidence requirement is used to establish the objective prong of a deliberate indifference claim.  *See Burgess v. Fischer*, 735 F.3d 462, 477 (6th Cir. 2013) ("We explained in *Blackmore* that verifying medical evidence of an exacerbated injury was necessary to establish the objective prong for 'minor maladies or non-obvious complaints of a serious need for medical care'.") (citing *Blackmore*, 390 F.3d at 898 and *Napier*, 238 F.3d at 742).

Here, plaintiff did not place verifying medical evidence in the record to establish any detrimental effect due to a delay in treatment.  Plaintiff presented no evidence with respect to treatment for his wrist and had only minimal follow-up treatment for his lower back, *i.e.*, over-the-counter pain medications and instructions for stretching exercises.  In short, there is no medical evidence to corroborate that plaintiff suffered from a delay in treatment for a serious medical need.

Furthermore, the record does not establish that defendants met the subjective prong of a deliberate indifference claim by disregarding an excessive risk to plaintiff's health or safety. The meet the subjective prong, a plaintiff must establish that a defendant acted with "obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."  *Whitley*, 475 U.S. at 319.  As this Court observed:

The Supreme Court has described "wanton" conduct as follows:

"Wanton means reckless—without regard to the rights of others. . . .  Wantonly means causelessly, without restraint, and in reckless disregard of the rights of others. Wantonness is defined as a licentious act of one man towards the person of another, without regard to his rights; it has also been defined as the conscious failure by one charged with a duty to exercise due care and diligence to prevent an injury after the discovery of the peril, or under circumstances where he is charged with a

14

knowledge of such peril, and being conscious of the inevitable or probable results of such failure."

Smith v. Wade, 461 U.S. 30, 39 n. 8, 103 S.Ct. 1625, 1631 n. 8, 75 L.Ed.2d 632 (1983) (quoting 30 American and English Encyclopedia of Law 2–4 (2d ed.1905) (footnotes omitted)).

Hurley v. Deutsche Bank Trust Company Americas, No. 1:08-cv-361, 2010 WL 5293592 at *5 (Dec. 17, 2010), on reconsideration in part, 2011 WL 13196175 (W.D. Mich. Feb. 4, 2011).  Here, plaintiff suffered only minor injuries.  Defendants were not aware of any facts from which they could draw an inference that plaintiff had a serious medical need.

The Court notes that there is a factual dispute as to whether plaintiff was wearing a seatbelt.  However, viewing the evidence in the light most favorable to plaintiff, a reasonable juror would not conclude that defendants were deliberately indifferent to plaintiff's health or safety on the basis that he was not wearing a seatbelt in the backseat of the squad car.  Even if defendants Kasher and Neher failed to buckle plaintiff in the backseat, there is no evidence that such action amounted to negligence.[6]  Such conduct falls far short of the wanton conduct necessary to establish a federal constitutional violation.  Accordingly, for all of these reasons, defendants Kasher and Neher's motion for summary judgment should be granted with respect to plaintiff's 14th Amendment claim.

Finally, defendants claim that they are entitled to qualified immunity.  Under this affirmative defense, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The doctrine of qualified immunity "gives

---

[6]  The Court notes that Michigan's safety belt statute does not require adult occupants of backseat to be secured by a safety belt.  See M.C.L. § 257.710e.

government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Carroll v. Carman*, -- U.S. --, 135 S. Ct. 348, 350 (2014).  When a defendant raises the issue of qualified immunity on summary judgment, "[t]he ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity." *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000). Although the plaintiff bears the ultimate burden, "[t]he defendant bears the initial burden of coming forward with facts to suggest that he acted within the scope of his discretionary authority during the incident in question." *Id.*  Once this is accomplished, "the burden shifts to the plaintiff to establish that the defendant's conduct violated a right so clearly established that any official in his position would have clearly understood that he was under an affirmative duty to refrain from such conduct." *Id.*  To meet his burden on summary judgment, a plaintiff must show (1) that a constitutional right was violated, and (2) that the right was clearly established at the time of the violation. *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009).  The court may exercise its discretion to decide which prong of the test to address first in light of the circumstances of the case. *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir 2011), citing *Pearson v. Callahan*, 555 U.S. 223, 232-33 (2009).

As discussed, the Court concluded that defendants did not violate a constitutional right. *See Bishop*, 636 F.3d at 765.  The Court also concludes that no such right was clearly established at the time of the alleged violation.  Here, defendants point out that "[i]t was clearly established in 2014 that if a detained individual, such as plaintiff, was manifesting a serious medical need, defendants Neher and Kasher had the obligation to see to it that Plaintiff receive medical care."  Kasher/Neher Brief (ECF No. 172, PageID.1201.  In this regard, defendants state:

> The law was also clearly established that a minor malady or non-obvious injury, such as Plaintiff presented in this case, does not give rise to the obligation to ensure

16

medical treatment was provided unless the failure to do so would result in a detrimental effect to the Plaintiff. Indeed, the established law in 2014 was that a complaint of a backache is not a medical condition to which a Defendant can be deliberately indifferent. *See e.g. Brim v. Clark*, 2011 W.L. 3477067 (W.D. Mich. 2011).

*Id*.  As an initial matter, defendants have overstated the holding in the *Brim* case.  The *Brim* opinion did not involve a "back ache" after an automobile accident. Rather, it involved a sprained knee and a request for arch supports from a state prisoner who allegedly injured his knee while playing basketball at a correctional Facility. *See Brim v. Clark*, No. 2:10-cv-64, 2011 WL 3477067 at *1-3 (W.D. Mich. Aug. 9, 2011); Amended Complaint (ECF No. 7, PageID.35-36).

Nevertheless, plaintiff has failed to meet his burden showing that defendants violated a clearly established right.  In this regard, the Court looks to the decision in *Scott v. Becher*, 736 Fed. Appx. 130 (6th Cir. 2018).  In *Scott v. Becher*, the Sixth Circuit concluded that a prison bus driver who allegedly drove a prison bus off of the road and went "airborne" was entitled to qualified immunity with respect to a prisoner's claim that after the incident, the driver should have driven the prisoners directly to a hospital rather than to the prison:

Scott also argues that Becher was deliberately indifferent to his medical needs. Scott is correct that a prison guard is deliberately indifferent "in intentionally denying or delaying access to medical care . . . for a serious medical need." *See Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004). But he cannot satisfy that standard here. Scott alleges that after the bus went airborne and he slammed down, he was in tremendous pain. He demanded to be taken to a hospital. Instead of taking the prison bus to the hospital, the bus traveled the remaining short distance to the prison before Scott was able to go to the infirmary to get medical attention. As discussed below, Scott alleges that he did not receive sufficient care when he arrived in the infirmary; but that is another matter. <u>We cannot say that any reasonable officer would have known that the constitution required Becher to drive the prison bus immediately to a hospital.</u> *See Blackmore*, 390 F.3d at 897. Becher is entitled to qualified immunity on the claim of deliberate indifference to medical needs.

*Scott*, 736 Fed. Appx. at 134 (emphasis added).  Similarly, in this case, this Court cannot say that any reasonable officer would have known that, when a pre-trial detainee showed no signs of

traumatic injury after a minor collision,  the constitution required the officer to drive the detainee

to a hospital rather than the county jail, where, as here, the detainee would be evaluated by a nurse

after booking.  Accordingly, defendants Kasher and Neher are entitled to qualified immunity on

plaintiff's 14th Amendment claim.

### 2. Defendant Hairston

### a. Evidence presented by the parties

Hairston relies on Muskegon County Jail records and plaintiff's testimony

regarding the booking procedure.[7]  Plaintiff's "Jail Medical Screen History Report" (Exhibit 5)

(ECF No. 169-3, PageID.1107-1118) from August 1, 2014 at 14:05:00 makes no mention of

injuries from an accident.[8]  This screening report was prepared by non-party Nurse Boxer. *Id*.  The

form states that there are no visible signs of trauma or bruising, makes no mention of a wrist injury,

and refers to what appears to be a medical history of "disk in lower lumbar, syatica [sic]". *Id*.[9]

Hairston also refers to a report dated August 1, 2014 at 16:24:00 which refers to a

"Jail Incident" described as "Medical" with the following statement:

> Upon being booked into our facility the above subject stated the following.
> He is bipolar, anziety [sic] and depression.  He has a disk in his lower back, He
> [sic] has emphazema [sic] and he has verapamil 120mgs, Fibercon and eye drops
> on his person.  He also stated that he takes seraquel.

Report (ECF No. 169-4, PageID.1120).

In addition, Hairston relies on plaintiff's deposition testimony:

Q    Did he see -- do you know that he saw your -- swelling in your right wrist?
A    He knew it was hurting because every time he tried to run --

---

[7] Hairston also cites the two videos in support of his claim to demonstrate that plaintiff did not sustain a serious injury in the accident.  Hairston Brief (ECF No. 169, PageID.1098).  The Court has not considered these videos in resolving plaintiff's claim against Hairston.  Neither of the videos involve Hairston's interaction with plaintiff at the Muskegon County Jail, and there is no evidence that Hairston was aware of the contents of the videos when he booked plaintiff into the jail.

[8] The Court notes that Hairston attached multiple copies of this document to the brief.

[9] The Court notes that the copies provided by Hairston are not signed by either the classification officer or plaintiff (ECF No. 169-3, PageID.1107-1118).

Q      I didn't ask --
A      -- a fingerprint --
Q      -- about if it was hurt. I asked do you know -- do you know --
A      I don't know.
Q      -- if he saw --
A      I don't know.
Q      You don't know if he perceived that he -- you had swelling in your right
wris – right wrist? I apologize.
A      Right.
Q      Okay. Do you know if he perceived an injury in your back?
A      Yes.
Q      How do you know that?
A      Because I could barely stand up.

Muhammad Dep (ECF No. 169-5, PageID.1167); Hairston Brief at PageID.1094-1095.

For his part, plaintiff filed responses to requests for admissions directed to defendant Hairston (ECF s No. 175-1, PageID.1304-1310).  As an initial matter, most of plaintiff's requests for admissions are in violation of the case management order (CMO), which limited plaintiff to serving five requests for admissions for each opposing party.  *See* CMO (ECF No. 158, PageID.978).  Here, plaintiff served an excessive number of requests for admissions against defendant Hairston (i.e., twenty rather than five as allowed by the CMO).  Accordingly, the Court will not consider any responses to requests 6 through 20.[10]

Responses 1 and 2 established that defendant Hairston is aware of the existence of the United States Constitution and that he was involved in the booking process of plaintiff at the Muskegon County Jail on August 1, 2014.  Hairston Admissions (ECF No. 175-1, PageID.1305).  Response 3 sought to establish an ultimate issue of fact in this case, *i.e.*, that plaintiff "was suffering from extreme lower back and right wrist pain" during the booking process.  *Id*.  Hairston

---

[10] Due in large part to plaintiff's prolific (and at times meritless) filings, the docket sheet for this case consisted of 157 entries and 976 pages of documents before the Court entered the CMO.  Discovery was stayed from April 18, 2018 through May 10, 2018.  *See* Order (ECF No. 139) and CMO (ECF No. 158). Nevertheless, plaintiff served discovery on defendants during the stay.  *See* Proofs of Service (ECF Nos. 140, 144 and 154).  Plaintiff's excessive discovery requests are not excused because he filed the requests before the Court authorized the parties to engage in discovery.

denied this as untrue and referred plaintiff to the "medical screening document" previously provided to plaintiff. *Id.* Request 4 included multiple requests for admission: that while plaintiff was being finger printed, his right wrist was swollen and Hairston asked what happened; that plaintiff "expressed the painfulness" when Hairston "had to roll the finder print on the finger printing machine"; and that plaintiff told Hairston that he (plaintiff) "was just in a [sic] accident during transport." *Id*. Hairston denied the requested admissions as untrue and directed plaintiff to the medical screening document. *Id*. Request 5 also included multiple requests for admission: that Hairston told plaintiff that he would see a nurse because "it's a booking requirement;" that Hairston did not notify nursing or a qualified medical examiner "that the Plaintiff has advised defendant Hairston that he was in a [sic] accident during transport and sustained serious injuries." *Id*. Hairston denied the requested admissions as untrue and directed plaintiff to the medical screening document which "lists all medical conditions made aware to Defendant Hairston at the time of the booking." *Id*.

Plaintiff also submitted copies of 25 written interrogatory responses from defendant Hairston (ECF No. 175-1, PageID.1292-1302).  Once again, plaintiff violated the CMO, which allowed him to serve 10 interrogatories for each opposing party.  Given plaintiff's violation, the Court will not consider the responses to Interrogatories 11 through 25. That being said, little information can be gleaned from this document.  Interrogatories 1 through 4 sought background information on Hairston, and included irrelevant legal conclusions, *e.g.*, "What is Article 25(1) of the Universal Declaration of Human Rights [adopted by the general assembly of the United Nations on Dec. 10, 1948] as it relates to the U.S. Constitution?"  Hairston Interrogatories (ECF No. 175-1, PageID.1293).  In Interrogatory 5 Hairston stated that he did not recall how plaintiff arrived at the Muskegon County Jail and referred plaintiff to the Norton Shores Police Department

Records.  *Id*. at PageID.1294. In Interrogatory 6, plaintiff sought personal information on a jail employee, asking for the identity of "the processing officer" at the jail, along with that officer's "working title, badge no., cellphone/home phone number, address, and employer?"  *Id*.  Hairston referred plaintiff to the booking file which had been produced to plaintiff.  *Id*.  In Interrogatory 7, which involved the "processing officer's" knowledge of plaintiff's condition, defendant Hairston stated that "[u]pon information and belief, Plaintiff did not have any injuries."  *Id*.  In Interrogatory 8, Hairston did not recall receiving a telephone call:

> from either NSPD and or Defendant Michael D. Kesher or Kyle A. Neher notifying MCJ facility staff or Defendant Hairston that incoming Plaintiff Muhammad has (had) just been involved in a collision with a crossing deer at a very high speeds [sic] while restrained in wrist-belly chains and ankle restrains [sic] unsecured in back of NSPD squad care without a seat belt, requesting a qualified medical examiner to treat any injuries or possible injuries sustain [sic] to the Plaintiff as a result[.]

*Id*. at PageID.1295.  In Interrogatory 9, Hairston did not recall receiving such a telephone call from "the alternate prisoner transporting officer" [i.e., "Unknown Party #2"].  *Id*. at PageID.1295-1296. Finally, in Interrogatory 10, when asked "what time" plaintiff was booked into the Muskegon County Jail on August 1, 2014 and was Hairston the booking deputy officer, Hairston referred plaintiff to the booking file previously produced to plaintiff.  *Id*. at PageID.1296.

Plaintiff also submitted a copy of the Muskegon County Sheriff's booking report (ECF No. 175-1, PageID.1290).  This document identified Hairston as the booking officer, fingerprint officer, and search officer, and established that plaintiff was booked into the Muskegon County Jail on August 1, 2014 at 14:05 hours, after being arrested for robbery and possession of a firearm in the commission of a crime.  *Id*.

### b.    Discussion

Plaintiff contends that he is entitled to summary judgment because defendant

Hairston did not provide him with immediate medical care when he was booked at the jail.  While defendant Hairston's motion seeks summary judgment on the basis of qualified immunity, he does not develop any arguments in support of that claim.  After citing the standard for qualified immunity, Hairston does not address the elements of a qualified immunity claim; he does not identify the scope of his discretionary authority; claim that he acted within the scope of his discretionary authority; admit that he made a reasonable but mistaken judgment; or address the clearly established law upon which he relied.  Rather, Hairston simply argues that he is entitled to summary judgment because plaintiff did not establish a factual basis to support a claim for deliberate indifference.  Accordingly, the Court will review Hairston's motion as simply one seeking summary judgment pursuant to Fed. R. Civ. P. 56(a).

It is undisputed that at the booking, plaintiff did not have any visible signs of trauma.  According to plaintiff, he limped and "expressed pain to Hairston" with respect to his back, his wrist, or both.  Assuming that these facts are true, it is undisputed (1) that Hairston told plaintiff that he would see a nurse, and (2) that plaintiff did see a nurse after Hairston completed the booking process.  As reflected in the booking papers, plaintiff's medical history made no mention of an accident on the way to the jail or injuries from an accident.

Viewing the record in the light most favorable to plaintiff, the Court concludes that plaintiff has failed to establish either the objective or subjective prong of his deliberate indifference claim against defendant Hairston.  First, plaintiff did not exhibit the need for immediate or emergent medical care.  Second, there is no basis for a claim that Hairston delayed treatment because plaintiff saw a nurse before he was placed in a cell.  Third, it would be reasonable for Hairston, as the booking officer, to defer medical complaints to the jail nurse.  For these reasons, plaintiff's motion for summary judgment against defendant Hairston should be denied, and

Hairston's motion for summary judgment should be granted.

### D.    Plaintiff's state law claim against defendant Kasher

### 1.    Dismissal of plaintiff's supplemental state law claim

Finally, plaintiff contends that defendant Kasher is liable under state law because he was grossly negligent while driving the squad car.  The Court exercised its supplemental jurisdiction over this state law claim pursuant to 28 U.S.C. § 1367, presumably because the claim was intimately related to the alleged § 1983 violation.  *See* 28 U.S.C. § 1367(a) ("the district court shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form a part of the same case or controversy").  The dismissal of plaintiff's federal claims against defendants, however, requires the Court to re-examine the issue of supplemental jurisdiction for state law claims against these defendants.  Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction."  Thus, once a court has dismissed a plaintiff's federal claim, the court must determine whether to exercise, or not to exercise, its supplemental jurisdiction under § 1367.  *See Campanella v. Commerce Exchange Bank*, 137 F.3d 885, 892-893 (6th Cir. 1998).  As a general rule "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims."  *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254-1255 (6th Cir. 1996).  Here, if the Court accepts the undersigned's report and rejects plaintiff's federal claims, the Court could dismiss plaintiff's state law claim pursuant to § 1367.  However, given the time and effort spent by this Court and the parties on this case, the Court may want to address the merits of this claim and grant summary judgment in favor of defendants for the reasons set forth in § II.D.2, *infra*.

### 2.      Merits of plaintiff's state law claim

In the alternative, the undersigned concludes that defendant Kasher is entitled to summary judgment on the state law claim. As a general rule, "each officer and employee of a governmental agency . . . is immune from tort liability for an injury to a person" provided that the officer or employee "is acting or reasonably believes he or she is acting within the scope of his or her authority," "[t]he governmental agency is engaged in the exercise or discharge of a governmental function," and the officer or employee's "conduct does not amount to gross negligence that is the proximate cause of the injury or damage."  M.C.L. § 691.1407(1), (2)(a), (2)(b) and (2)(c).  For purposes of this statute, "gross negligence" is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results."  M.C.L. § 691.1407(8)(a).  "The plain language of the governmental immunity statute indicates that the Legislature limited employee liability to situations where the contested conduct was substantially more than negligent."  *Maiden v. Rozwood*, 461 Mich. 109, 122; 597 N.W.2d 817 (1999).

The Court has reviewed the video of the accident, *see* Exh. 2 (ECF No. 174-1) (11:12:37 to 11:12:49), and considered the other evidence discussed in this report. Viewing the evidence in the light most favorable to plaintiff, no jury would reasonably conclude that defendant Kasher's conduct amounted to gross negligence.  On the contrary, Kasher maintained control of the squad car before the deer ran in front of it, at the time of impact, and after the collision.   In the alternative to dismissing the state law claim under § 1367, defendant Kasher's motion for summary judgment should be granted.

### III.    Recommendation

For the reasons set forth above, I respectfully recommend that defendant Hairston's motion for summary judgment (ECF No. 169) be **GRANTED**, that defendants Kasher and Neher's

motion for summary judgment (ECF No. 171) be **GRANTED**, that plaintiff's motion for summary

judgment (ECF No. 175) be **DENIED**, and that this action be **DISMISSED**.


Dated:  August 9, 2019                              /s/ Ray Kent
                                                    United States Magistrate Juduge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).